237313 and 7321. Good morning, Your Honors. Stephen Biolsi for the Appellant Defendant in the Commercial Mortgage Foreclosure Action. Your Honors, we believe that the calculations were incorrect and we would ask Your Honors to send it back to include a recalculation as to the amount of interest. The interest has accrued at 24% for over a decade. However, case law in the state court has held that some parts of this accrual through no fault of the defendant should be removed from that calculation. We're looking at an unpaid principal balance of $725,000, but the judgment figures are $3.4 million. That $3.4 million is a result of an accrual of interest during at least a three-year period where the plaintiff ignored court orders. The plaintiff's argument is that there is a case law in the appellate division that says that as long as the delay isn't so egregious, you don't have to necessarily remove the interest calculation. But in terms of delay, didn't both parties contribute to the delay in the foreclosure proceedings before the state court? No. Why not? I mean, I looked at the state docket. There seemed to be a lot of litigation back and forth caused by both sides. Your Honor, if that were correct, the plaintiff in the state court action could have appealed that order dismissing the case. The judge made no reference at all to the inaction by the defendants. It was, in fact, the plaintiff that failed to adequately prosecute the case. The case was punished, I'm sorry, the plaintiff was sanctioned because of their failure to comply with the discovery schedule by the court. There's no appeal. There's no vacature of that decision. And, in fact, in state court routinely, it's in New York, they call it a 3216 dismissal. Those orders are routinely overturned if there is an error. Here it was so proper, not even a notice of appeal was filed, nor was any effort made. So we do find that it is actually a willful violation of a court order. And it was more than just egregious. It is contumacious, contumacious conduct. But, I mean, part of the problem here is, I mean, you guys defaulted in the federal court and you didn't really show up until the very end when the magistrate judge was doing the inquest for damages, right? Yes, sir. And if that's true, then we couldn't have contributed to any delay in the federal case either. Well, why not? I mean, you're supposed to show up. Defaulting is not something that redounds to your benefit. Yes, sir. The issue was with regard to the service of the summons. And if the issue was a tolling as to the federal court case, then I would agree with your Honor if your Honor is saying that there shouldn't be a tolling of that portion. I'm not arguing that the case was started in 2018. It's the issue of the first case. I understand the point. I think my point is that you're arguing these much more eloquently and thoroughly in the court of appeals than you did in the district court, right? I'm sorry. You're arguing this all now, but you really didn't argue most of this in the district court. Yes, you did. You got there really late to the part. No, Judge. We were there for the calculations. No, your Honor. In fact, the judge actually allowed me to submit letters regarding the Peralta decision. The Deutsche Bank versus Armstrong decision didn't even exist yet, although I had argued it before the magistrate. We were there for the calculations. I was present. The judge didn't have a hearing. The judge basically did it on the papers, which is equivalent, I guess, to a hearing. So, no, I was provided every opportunity to raise these exact same arguments. And my arguments were that a lawyer shouldn't be rewarded with attorney's fees if a judge is saying you failed to comply with a court order. That's the crux of that case. And the prejudice to my client is that he has, or they, the corporations, have an equitable right of redemption to pay off the $725,000. We're not disputing that. The unpaid principal should be paid. The interest should be paid. But the million dollars that has accrued while we're ignoring court orders shouldn't be a reward, the 24% interest that accrued at that point. But I guess the ignoring of court orders didn't prevent your client from performing under the contract, right? In the state court, I guess that's – you're basically saying it's an unclean hands kind of thing. But I guess I'm trying to understand. The reason why the interest is so high is because your client didn't perform under the contract and it took a long time. But nothing prevented them from performing under the contract while the state case was going, right? Yes, there was, Judge, yes. So tell me why. You can't write the check. You can't exercise your equitable right of redemption when the mortgagee is saying you owe 24% interest on top of the $725,000. There's no way to write a check until there is a fixed number to exercise your equitable right of redemption. The mortgagee, during all negotiations, during every time that this issue was discussed, whether in court or out of court, the issue was the number is too high. Which brings us to the other point of when you're examining the equitable right of redemption, the court is required and is permitted to sell property to satisfy the lien. Well, there's four properties here, each one non-adjacent to the other. But they were ultimately sold separately. So isn't that issue? No, Judge, they weren't sold separately. They were sold back to either the plaintiff or agencies of the plaintiff. They weren't sold separately. And they should have been, because had we had a proper calculation of $725,000 plus an equitable amount of interest, one property may have satisfied the entire debt. Well, what about the fact that can't the court take into consideration in reducing, in adjusting the interest, the fact that your client continued to receive receipts for renting these properties, correct? Well, there was a receiver in place for that, Judge. But there was a benefit that your client received all this time that the property was in these foreclosure proceedings pending, such as rent. The business is correct? Well, hopefully, Judge, yes, because you don't want vacant properties. Hopefully you don't know? No, there was an issue. We were in landlord-tenant court during the time, Judge. And that's not in the record, but yes, there were problems with collecting rent because there was an issue. With all of the tenants or just one of the tenants? Judge, I do recall I was in court on most of it, all of the tenants. We were all in court. There was, I think, Catholic Charities was paying, and then it wasn't sure who to pay. So I don't want to mislead the court in my answer to that. So there were monies paid. I don't know if the receiver collected. But the court considered that, right? The fact that while all this litigation is pending, your client was still receiving income from rental of that property. Yes, Judge. The concern that I have there is that it was a statement made without any evidence of how much rent was paid. I do believe the rent should be used to pay down the principal. But it's not a 24% interest. Your Honor, the interest is accruing at $809 a day. Thank you very much. You've reserved some time for a vote. Yes, sir. Thank you. Your Honors, may it please the court. Ken Flickinger from Orfield Kerman, counsel for the plaintiff appellee in this case. Your Honors, the judgment of the district court should be affirmed. The defendants argue that the district court should have reduced the award of interest in the judgment based on these allegations of periods of delay throughout the foreclosure process. The first argument is that the court doesn't have the discretion to do that. We've put the arguments in our brief regarding CPLR 5001 and the CPLR's predecessor in the Civil Practice Act and what is a longstanding law in the state of New York that a contract claim, interest is mandatory on an equitable claim, interest is discretionary on a contract claim. But Judge Quo didn't go off on this, right? I'm sorry? Judge Quo did not go off on this as a basis for not reducing the interest, right? No, Your Honor. No. So it might be better, I think, to get to there. I mean, you're seeking to defend the decision of the lower court, right? Yes, Your Honor. Okay. And so what the judge found was that this was not a situation where these equitable considerations justified a reduction from the statutory rate. Yes, Your Honor. So notwithstanding that first argument, we also argue that the defendants did not establish that there were reasonable grounds for tolling interest in this case. There was essentially three periods of time that the defendants alleged there were delays. The first period was from the defendants' initial default in failing to pay property taxes, which occurred in 2012, until the time that the first foreclosure action was commenced in state court, which was in 2015. That three-year period of time, there's a reasonable explanation that the plaintiff, or the plaintiff's predecessor in interest, as it were, did not commence foreclosure, and that's because the defendant was continuing to make monthly mortgage payments. It's reasonable that the mortgagee would not commence a foreclosure action as long as payments were coming in, and that's what happened in this case. Eventually, the defendants stopped making any payments at all in 2015, and the mortgagee commenced foreclosure at that time. There's also case law that pre-commencement delay never warrants the tolling of any interest, as long as it's within the statute of limitations. In 2015, the first foreclosure action was commenced in New York state court. That action, the delay that was alleged in that action was explained in the record by counsel for the plaintiff also, namely that the defendants contested the foreclosure action, that the defendants contested the foreclosure action on really a baseless basis, and that it was essentially they were contesting the plaintiff's standing and right to foreclose, whereas in 2013, the defendant had entered into a forbearance agreement with the plaintiff's predecessor in interest, who was the named plaintiff in that state court foreclosure action, and in the forbearance agreement agreed that the mortgagee was the holder of the note and mortgage and had the right to enforce it. There was also orders entered in the state court foreclosure action in which the parties essentially agreed to substitution of the plaintiff in the case and agreed that there would be an extension of the time to file the note of issue, which is essentially the notice of trial in the state court action. The plaintiff in this case, the defendants also refused to comply with discovery and didn't produce any responses to the plaintiff's discovery demands. In anticipation of this filing of the notice of trial, the plaintiff's attorney filed a motion with the court asking to extend the notice of trial filing time, which was in a previous order from the court saying that that would be entertained. The court more or less ignored the plaintiff's motion to extend the note of issue date and dismissed the action without prejudice. For failure to prosecute? Essentially, yes, Your Honor. And also that the judge had passed away in the interim, the judge that was supposed to end the trial? Correct. The judge that had issued the previous order. So that's the second period. Can you get to the third period? Yes, Your Honor. The third period is essentially from the time that the foreclosure action in the state court was dismissed without prejudice until the time essentially all the way through the prosecution of the federal foreclosure action, in this case the 2018 action commenced in the district court. So during that period of time there was an initial short delay, which is explained in the record by counsel, which explains that after the dismissal of the state court foreclosure action, they examined jurisdictional issues regarding commencing the action in federal court that they examined and investigated the death of the signatory to the loan documents and the subsequent death of the administrator appointed on behalf of the original signatory to the loan documents, which is a relatively complicated investigation. It requires significant resources and going not only to the surrogates courts, but also doing investigations of the individual parties themselves and the heirs. There were other explanations provided, including investigating the property, ordering title reports, reviewing title reports. So there was a period of time that the plaintiff's counsel was preparing to refile the case in federal court, ultimately refiled the case in 2018, and the record is very clear that since the refiling of this foreclosure action in federal court in 2018, that the plaintiff and his counsel have acted diligently all throughout. There was an initial delay in serving the defendant, Ronald Bassett, and that delay was short and was also occasioned by the fact that the defendant was incarcerated in another state and effecting service on him was difficult, but they ultimately did effect service on him, promptly moved for entry of a default judgment, promptly moved for a default judgment and calculation of the amounts owed, and everything after that, there was no delay at all on the part of the plaintiff and his counsel. The delay that occurred during the pendency of this federal district court foreclosure action was occasioned by the time from the submission of motions until the time that the court rendered decisions on the motions, which is just a part of life litigating cases in New York state court, New York federal court, there's just delays, and those can't be attributed to the plaintiff or its counsel because they have no control over it. Your honors, I can speak briefly to the attorney's fees award, which is just that the magistrate judge undertook a very detailed analysis of the attorney's fee award in this case and ultimately reduced the attorney's fees by 44%, and I don't think there's any error in the way that the district court analyzed that and awarded the attorney's fees. The attorney's fees are permitted, reasonable attorney's fees are permitted pursuant to the contract. As far as the issue regarding RPAPL 1351 and auctioning the properties individually in parcels, that was in the judgment. Page 8 of the judgment specifically states that the properties would be auctioned individually in parcels or collectively, and in this case, when the properties were auctioned on October 20th, 2023, the properties were initially put up individually. Each of the four properties was auctioned by itself, and then all of the properties were auctioned collectively as one group of four properties so as to achieve the highest bid, and the sale of the properties collectively achieved the highest bid. How there can be any prejudice to the defendant in that case, I really can't see. And just briefly in response to defendants' arguments, the idea of ignoring court orders, it's really not true, because the plaintiff in the state court foreclosure action did not ignore the court orders. The plaintiff specifically filed a motion to extend the period of time in response to that upcoming date. That's hardly ignoring. In certain cases, I can understand where a plaintiff files an action, sits on his hands, literally does nothing, and just sits there letting interest or default interest continue to pile up because there's equity in the property, and they just want to continue to get interest on the principle. But that's certainly not present. None of those facts are present in this case. These foreclosure actions were both diligently prosecuted throughout. And I would also just argue that the appellate division cases cited by the defendant in their papers all encompass unexplained delay, and in this case, we have explained delay. Thank you very much. Thank you. Thank you, Your Honor. Thank you, Your Honor. Very briefly, to address the issue of the state court action, I want to just focus on that time period. The court order that was the predicate for the order of dismissal lays blame with the plaintiff for the plaintiff's delay. And, in fact, the plaintiff at joint appendix page 440, it says the plaintiff's time to respond shall be extended. Plaintiff's time to respond to discovery by the defendant shall be extended, not the reverse. So it is plaintiff that was in this record that clearly demonstrates their failure to comply with the court order of discovery. Then we turn to page 441 of the joint record of appeal, and we notice that it says that the records of the court indicate no note of issue has been filed to date and no motion has been made to extend the time. That's what's in the record. If this order was wrong, they had recourse in the state court. This court order has not been disturbed. This is the law of the case in that action. They did fail to comply with the court order. That rests and that cuts against the mortgagee's argument regarding the power of the court. The appellate division second department, Deutsche Bank v. Armstrong, which I cite in both briefs, clearly is exactly the same issue. You're not entitled to the interest that accrued from the time that lawsuit was commenced to the time that it was dismissed pursuant to 3216. There is no departure except for the amount of years. I think Armstrong was five years. This is three years. When I presented my arguments to the magistrate and to the judge, those arguments included all time periods. And if your honors believe that there should be maybe one time period, two time periods, or all three time periods, depending on how your honors are to rule, the matter should be sent back for the recalculation as to those periods. So if your honor believed that there was no delay in the federal court case, we would accept that. And we would do if your honors just said that the Deutsche Bank v. Armstrong, for example, tolling of the state court case where the state judge said it is the plaintiff's failure to comply with court orders. The other issue that's squarely on point with the second department, and the reason why, as your honors are aware, with the second department is because there's not too many cases in the second circuit, is the Kapoor case in the briefs regarding the record must be supported by whether or not the properties can be practically sold as three separate properties. There's no evidence in the record that they should be sold as one. And for that reason, it should be remanded back. Just saying something should be sold, the record should have supported that. So if your honors don't believe that the plaintiff did fail to comply with the court order, the matter would still have to be sent back to figure out which property could satisfy the 725 unpaid principal plus the protective advances of taxes for the time period the taxes weren't paid, and then figure out how to proceed most equitably so my client can make sure the plaintiff is paid in full, exercising equitable redemption. Thank you, your honors. The floor is open to decision.